# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **BEVAN & ASSOCIATES, LPA, et al.,** | : | |
| | : | Case No. 2:16-CV-0746 |
| Plaintiffs, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Jolson |
| **RICHARD MICHAEL DEWINE, et al.,** | : | |
| | : | |
| Defendants. | : | |

## OPINION & ORDER

This matter is before the Court on two motions to dismiss: (1) that of Defendants Thomas H. Bainbridge, Jodie M. Taylor and Karen L. Gillmor, in their official capacities as Commissioners of the Industrial Commission of Ohio, and Sarah Morrison, in her Official Capacity as Administrator of the Bureau of Worker's Compensation (the "Commission Defendants") (Doc. 20); and (2) that of Defendant Ohio Attorney General Mike DeWine (Doc. 21.) For the reasons that follow, the Court **DENIES** the motions.

## I. BACKGROUND

This case involves a First Amendment challenge to an Ohio statute that arguably prohibits a law firm's practice of advertising to potential workers' compensation clients through the mail. Plaintiffs are a law firm and its principals practicing in the field of workers' compensation and Social Security disability benefits (collectively, "Bevan"). (Doc. 1 at ¶¶ 6-8, 25-28.) Defendants are the Ohio Attorney General, as well as employees of the Commission Defendants, who Plaintiffs sue in their official capacities. (*Id.* at ¶¶ 9-13.)

Plaintiffs use mailings to advertise their legal services. (*Id.* at ¶¶ 21-23.) To reach their targeted audience, Plaintiffs collect the addresses and phone numbers of workers compensation

1

claimants from a journalist entitled under Ohio Revised Code § 4123.88(D) to receive them. (*Id.* ¶ 21.) Plaintiffs provide this information, as well as information gleaned from other sources, to a bulk mail service company that prepares and sends the mailings. (*Id.* ¶ 22.)

Plaintiffs attach two mailings to their complaint. One mailing contains the heading "**ATTENTION INJURED <<COUNTY>> COUNTY WORKERS! DO YOU (OR DOES A MEMBER OF YOUR HOUSEHOLD) HAVE A *WORKERS COMPENSATION CLAIM WITH AN INJURY DATE OF 1/1/2008 TO PRESENT*?**" (*Id.* at PageId # 11.) It continues, "[i]f so, you may be entitled to an additional *CASH AWARD* for your injury that the Ohio Bureau of Workers Compensation (BWC) has not told you about! We'll tell you about it." (*Id.*) The mailing goes on to list categories of disability payment, request that claimants call the law firm free-of-charge, advertise the firm's success, and implore claimants to call "*immediately*, as **time may be running out!**" (*Id.*) It lists a phone number, and then promotes the firm's Social Security disability practice. (*Id.*) It contains a disclaimer in smaller type: "This ADVERTISING MATERIAL is not intended to be a SOLICITATION under Ohio's Rules governing lawyers, as it is unknown whether the recipient is in need of legal services." (*Id.*) Plaintiffs also mail a letter, which contains substantially the same information. (*Id.* at PageId # 12.)

Plaintiffs claim that Ohio Revised Code § 4123.88 and Ohio Administrative Code 4121-2-01(B) interfere with their First Amendment Rights to send these advertisements to workers' compensation claimants. Ohio Revised Code § 4123.88 prohibits, among other things, solicitation of workers compensation claimants for representation:

> . . . No person shall directly or indirectly solicit authority, or pay or give anything of value to another person to solicit authority, or accept or receive pay or anything of value from another person for soliciting authority, from a claimant . . . to take charge of, or represent the claimant . . . in respect of, any claim or appeal which is or may be filed with the bureau or commission[.]

§ 4123.88(A). It also provides that the Commission Defendants' claim files are "not public records," and are kept "for the exclusive use and information of the commission and the bureau in the discharge of their official duties[.]" *Id*. §§ 4123.88(B), (C). Journalists, however, may obtain the addresses and telephone numbers of claimants and their dependents if they send a written request containing, among other items, "[a] statement that the disclosure of the information sought is in the public interest." *Id.* §§ 4123.88(D)(1), (D)(3)(c). Violation of § 4123.88 is a second degree misdemeanor. Ohio Rev. Code § 4123.99. Ohio Administrative Code 4121-2-01(B) prohibits "person[s] who solicit[] or who cause[] claims to be solicited [from] practic[ing] or represent[ing] parties before the industrial commission or the bureau (section 4123.96 of the Revised Code)."

On February 22, 2016, the Ohio Attorney General's Office served grand jury subpoenas on Plaintiffs' business partners—the journalist, the bulk mailing company, and a company affiliated with the journalist. (Doc. 1 at ¶ 30.) The subpoenas seek records related to their relationship with the Bevan Firm. (*Id.*) Consequently, Plaintiffs believe that they are under investigation for violations of Ohio Revised Code § 4123.88(A). (*Id.* ¶¶ 30-31.) This belief has caused Plaintiffs to "curtail[] . . . [their] legitimate advertising activity and chill[] the exercise of their First Amendment right to engage in protected commercial speech." (*Id.* ¶ 31.)

Plaintiffs seek a declaratory judgment under 28 U.S.C. § 2201 and 42 U.S.C. § 1983 that Ohio Revised Code § 4123.88(A)[1] and Ohio Administrative Code 4121-2-01(B) are invalid on their face because they restrict speech in violation of the First Amendment to the United States Constitution, as imported to the states via its incorporation into the Due Process Clause of the

---

[1] Although the complaint appears to challenge the entirety of § 4123.88, Plaintiffs clarified in their briefing that the complaint "specifically challenge[s] the provisions of O.R.C. § 4123.88(A), which prohibit[s] anyone from soliciting authority to represent workers compensation claimants, in violation of the First Amendment." (Doc. 23 at 2.)

Fourteenth Amendment. (Doc. 1 at 9.) Plaintiffs also allege that these provisions are invalid as applied to them, and seek a permanent injunction enjoining Defendants from their enforcement, as well as money damages. (*Id.*)

The Commission Defendants moved to dismiss the complaint on the grounds that: (a) Plaintiffs lack standing to sue; (b) Plaintiffs have failed to support their claims for monetary damages; and (c) Plaintiffs have failed to state a First Amendment claim under Rule 12(b)(6). (Doc. 20.) The Attorney General also moved to dismiss the complaint under Rule 12(b)(6), and incorporated the arguments contained in the Commission Defendants' motion. (Doc. 21.) In response to the Commission Defendants' Motion to Dismiss, Plaintiffs agreed to dismiss their claims for monetary damages. (Doc. 23 at 9.) Both motions to dismiss are fully briefed and are ripe for review.

## II. STANDARD OF REVIEW

Defendants bring their motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Motions to dismiss under Rule 12(b)(1) "are categorized as either a facial attack or a factual attack." *Bell v. United States*, 4 F. Supp. 3d 908, 913 (S.D. Ohio 2014) (quoting *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012)). A facial attack on subject-matter jurisdiction is a "challenge to the sufficiency of the pleading itself," and therefore is resolved under the familiar Rule 12(b)(6) standard. *Id.* Here, Defendants present a facial attack. (Doc. 20 at 5.) The plaintiff bears the burden of proving jurisdiction. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a cause of action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such a

motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Thus, the Court "must construe the complaint in the light most favorable to the plaintiff" and "accept all well-pled factual allegations as true[.]" *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 790 (6th Cir. 2012). If more than one inference may be drawn from an allegation, the Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). The Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The allegations need not be detailed but must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. ANALYSIS

The Commission Defendants argue for the dismissal of Plaintiffs' complaint because: (a) Plaintiffs lack standing to sue; and (b) Plaintiffs have failed to state a First Amendment claim under Rule 12(b)(6). (Doc. 20.) The Attorney General adopts the Commission Defendants'

5

arguments, and adds two of its own: (a) the Attorney General is not a required party to the litigation under Ohio Revised Code § 2721.12(A); and (b) Plaintiffs have not alleged an adequate connection between the Attorney General and the alleged unconstitutional acts. (Doc. 21.) The Court will address each argument in turn.

### A. Plaintiffs Have Standing to Sue

Plaintiffs may not litigate in federal court without establishing Article III constitutional standing which requires a showing that they have suffered: (1) "an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *McGlone v. Bell*, 681 F.3d 718, 729 (6th Cir. 2012) (internal quotation omitted).

In addition to the Article III factors enumerated above, the Court weighs prudential standing factors, which "preclude litigation in federal court when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, or where instead of litigating his own legal rights and interests, the plaintiff instead purports to rest his claim to relief on the legal rights or interests of third parties." *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 349 (6th Cir. 2007) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (internal quotation marks omitted)). Prudential standing requirements also require the complaint to "fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Id.* (quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church and State*, 454 U.S. 464, 473 (1982)).

Defendants argue that, for Plaintiffs' challenges to § 4123.88(A) and § 4121-2-01(B), Plaintiffs have failed to meet the injury-in-fact and traceability factors of constitutional standing.

6

(Doc. 20 at 7-8.)[2] Defendants also address prudential factors as they relate to "the latter part of" Ohio Admin. Code 4121-2-01(B).[3] The Court will address each argument in turn.

### (1) Plaintiffs have Adequately Pleaded an Injury-in-fact

To show an injury-in-fact in the pre-enforcement context, Plaintiffs must show an "objective chill," namely, an "intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder . . . ." *McGlone*, 681 F.3d at 729 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

The parties do not dispute the fact that Plaintiffs send mailings to workers' compensation claimants offering legal services and that they intend to continue doing so. The parties also do not dispute the fact that § 4123.88(A) proscribes soliciting workers' compensation claimants to provide them with legal representation and that 4121-2-01(B) contemplates potentially barring those who solicit such claimants from practicing before the Commission Defendants. Reading the complaint in the light most favorable to Plaintiffs, these provisions proscribe Plaintiffs' actions in sending their mailings. The provisions are "arguably affected with a constitutional interest" because Plaintiffs contend that they abridge their First Amendment rights, and because "[l]awyer advertising is in the category of constitutionally protected commercial speech." *Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466, 472 (1988). The real question for the Court is whether Plaintiffs have alleged a credible threat of prosecution by the Attorney General's issuance of Grand Jury subpoenas to Plaintiffs' business partners engaged in the mailings.

---

[2] The parties do not appear to dispute that a declaration that the provisions are unconstitutional would redress Plaintiffs' alleged injury.
[3] Defendants also argue that Plaintiffs have failed to establish the prudential factors required to challenge §§ 4123.88(D) and (E). (Doc. 20 at 8.) Because Plaintiffs do not challenge these provisions, the Court does not consider these arguments. (Doc. 23 at 9.)

Defendants argue that Plaintiffs have failed to show a credible threat of prosecution because "allegations that third parties are being investigated do not show any injury to Bevan." (Doc. 20 at 7; Doc. 25 at 2.) They criticize Plaintiffs' pleading "on information and belief," and argue that "merely believing that an investigation relates to one's conduct does not establish a concrete injury, but is speculative and conjectural." (*Id.*) Defendants emphasize that injury-in-fact requires something "more" than an "otherwise-subjective allegation of chill," including "some specific action on the part of the defendant in order for the litigant to demonstrate" a "concrete harm." (*Id.* at 3-4 (quoting *Morrison v. Board of Education of Boyd County*, 521 F.3d 602, 608-10 (6th Cir.2008)).) And they argue that Grand Jury subpoenas issued to the journalist and the mailing company do not fall into existing categories of "more." (Doc. 25 at 3-4, citing *McKay v. Federspeil*, 823 F.3d 862 (6th Cir. 2016).)

Plaintiffs agree that the "credible threat of prosecution" inquiry turns on "how likely it is that the government will attempt to use these provisions against them . . . and not on how much the prospect of enforcement worries them." (Doc. 23 at 4 (quoting *Morrison*, 521 F.3d at 310).) Plaintiffs argue that the government may attempt to use the provisions against them—violation of § 4123.88(A) is a criminal misdemeanor, and violations of 4121-2-01 may result in a lawyer's inability to practice before the Commission Defendants. Ohio Rev. Code § 4123.99; Ohio Admin. Code 4121-2-01. And the government is likely to prosecute Plaintiffs because it "issued simultaneous subpoenas to all of Plaintiffs' business partners engaged in [its] mailings." (Doc. 23 at 6.)

Defendants analogize this case to *McKay* and *Morrison*, both of which are inapposite. In *McKay*, the plaintiff challenged an order prohibiting the use of certain devices in "court-related facilities" without a judge's permission. 823 F.3d at 864. The Sixth Circuit affirmed the district

court's order granting summary judgment to Defendants in part because McKay failed to show a credible threat of prosecution. *Id.* at 871. McKay's evidence of a credible threat of prosecution, however, was much weaker than Bevan's allegations here. For example, the order in *McKay* allowed for exemptions, which McKay did not seek. *Id.* at 869. The provisions challenged here allow no exemptions. In *McKay*, there was also unrefuted testimony that the Sheriff's Deputies could not even enforce the order without additional action from a judge. *Id.* at 870. Here, enforcement may be unilateral—the Attorney General may criminally enforce § 4123.88(A) against Bevan, and the Industrial Commission and the Bureau of Worker's Compensation may bar Plaintiffs from practice before them for violations of 4121-2-01(B). And, of course, the Court's standard of review is different for a motion for summary judgment than it is for a motion to dismiss.

*Morrison* is similarly inapposite. The plaintiff in *Morrison* feared speaking out against homosexuality in contravention of a school policy against stigmatizing or insulting students. *Morrison*, 521 F.3d at 606. Morrison had shown no credible threat of prosecution, because "the record [wa]s silent as to whether the school district threatened to punish or would have punished Morrison for protected speech in violation of its policy." *Morrison*, 521 F.3d at 610. Moreover, the challenged regulation in *Morrison* was a school policy that carried no threat of criminal penalties. *See G.B. v. Rogers*, No. 1:08–cv–437, 2009 WL 1322451, at *5 (S.D. Ohio May 11, 2009). Here, the record is not silent, as illustrated by the subpoenas issued by the Attorney General, and the challenged provisions are criminal in nature.

Plaintiffs counter with *McGlone*, which in equally inapposite. In *McGlone*, the Sixth Circuit found a credible threat of prosecution where: (a) the plaintiff was denied a permit required to speak; (b) a "police officer . . . threatened to arrest him for trespass if he did not stop

9

speaking and leave;" and (c) the defendants sent him a letter "notifying him that he would not be allowed on campus if he did not first obtain permission." *McGlone*, 681 F.3d at 731. The threat here is not as strong, certainly, as a direct threat of arrest.

Nonetheless, Plaintiffs have the better argument. The Supreme Court has held that "when fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative a plaintiff need not first expose himself to actual arrest or prosecution to be entitled to challenge the statute." *Babbitt*, 442 U.S. at 302 (internal quotations and brackets omitted). At issue in *Babbitt* was a consumer publicity prohibition of "dishonest, untruthful, and deceptive publicity" that a union feared violating during "free debate" in consumer appeals. *Id.* at 301. Because Arizona "ha[d] not disavowed any intention of invoking the criminal penalty provision against unions that commit[ted] unfair labor practices[,] Appellees [we]re thus not without some reason in fearing prosecution for violation of the ban on specified forms of consumer publicity." *Id.* at 302. That was true even when the state had never applied the criminal provision to commissions of unfair union practices. *Id.*[4] *See also United States v. Supreme Court of New Mexico*, 839 F.3d 888, 901 (10th Cir. 2016) (finding threat of prosecution to be credible where state attorney disciplinary provision applied to federal prosecutors, federal prosecutors intended to violate the rule, and state did not indicate that it would not prosecute them for violating the rule).

Here, too, there is a credible threat of prosecution because all of Plaintiffs' business partners associated with their solicitation of workers' compensation claimants received criminal grand jury subpoenas seeking information about Plaintiffs' business practices. Defendants infer from the subpoenas that any investigations would be against third parties rather than Plaintiffs.

---

[4] It is unclear from the case whether the state had applied the criminal provision to parties other than commissions of unfair union practices or whether the state had enforced non-criminal mechanisms contained in the statute against unions.

10

Knowing the fact that the Attorney General may issue subpoenas to *witnesses* in a criminal investigation in addition to *targets*, Plaintiffs infer from the subpoenas that they are under investigation for violation of the anti-solicitation provisions.[5] Taking all reasonable inferences in favor of Plaintiffs, as the Court must, the Court finds that Plaintiffs have adequately pleaded a credible threat of prosecution from the subpoenas and the fact that Defendants "ha[ve] not disavowed any intention of invoking the criminal penalty provision against [Plaintiffs]." *Id.* As such, Plaintiffs have alleged "more" than subjective chill. *Morrison*, 521 F.3d at 609.

Because Plaintiffs "engage in a course of conduct protected by the Constitution, but proscribed by statute, for which they face a credible threat of prosecution" (Doc. 23 at 3), they have suffered an injury-in-fact.

### (2) The Alleged Injury is Fairly Traceable to Defendants

Defendants argue that "Bevan makes no allegations that the investigations are even traceable to the bureau's administrator or the commission members." (Doc. 20 at 7.) Plaintiffs' counter is twofold. First, "investigations" are not the focus of their Complaint; rather, they focus on "deprivation of Plaintiffs' First Amendment right to engage in protected speech." (Doc. 23 at 8.) Second, the Commission "Defendants can bar Plaintiffs from practicing before them for violations of the challenged statutory and administrative code provisions[.]" (*Id.*)

The Court agrees with Plaintiffs. While the Attorney General may prosecute Plaintiffs for the criminal violation, the Commission Defendants regulate, and may suspend or bar, Plaintiffs' practice before them. Ohio Rev. Code § 4123.06; Ohio Admin. Code § 4121-2-01. The Commission Defendants may also request that the Attorney General "institute and prosecute

---

[5] The facts underlying this inference are "peculiarly within the possession and control of the defendant, [and] the belief is based on factual information that makes the inference of culpability plausible." *Cassidy v. Teaching Co., LLC*, No. 13-cv-884, 2014 WL 1599518, at *3-*4 (S.D. Ohio Apr. 21, 2014). Therefore, Plaintiffs properly plead this inference "on information and belief."

11

the necessary actions or proceedings for the enforcement of this chapter," which, upon such request, the Attorney General or the relevant prosecuting attorney "shall" do. Ohio Rev. Code § 4123.92. And the Industrial Commission, the body charged with appeals from the Bureau of Workers' Compensation, promulgated 4121-2-01. Therefore, the alleged injury is fairly traceable to the challenged action of the Commission Defendants. *See also McGlone*, 681 F.3d at 729 (first amendment challenge to policy was fairly traceable because policy was created and enforced by the defendant).

### (3) Defendants' Argument on the Prudential Factors is Not Relevant

Defendants contend that "the latter part of Ohio Admin. Code 4121-2-01(B) . . . regulates non-attorneys." (Doc. 20 at 8.) Because Plaintiffs are attorneys, Defendants argue that this provision does not regulate their conduct. Indeed, 4121-2-01(B) contains two sentences. The first is a general prohibition on solicitation,[6] and the second contains a prohibition on persons "other than an attorney in good standing."[7] Defendants are correct that the second sentence is not directed at Plaintiffs, who are attorneys, and Plaintiffs do not offer any counterargument. Plaintiffs focus, in both their complaint and their brief in opposition to the Commission Defendants' motions to dismiss, on solicitation rather than advice. Therefore, the parties appear to be in agreement that the complaint does not address the second sentence of Section 4121-2-01(B). Therefore, the Court need not address the issue.

In sum, Plaintiffs have standing to raise their First Amendment claim.

---

[6] The first sentence provides that "[n]o person who solicits or who causes claims to be solicited shall be allowed to practice or represent parties before the industrial commission or the bureau (section 4123.96 of the Revised Code)." Ohio Admin. Code 4121-2-01(B).

[7] The second sentence provides that "[n]o person other than an attorney in good standing may render advice or services in the preparation or presentation of a claim for compensation arising under the workers' compensation laws of Ohio if a fee for such advice or services is to be received from or charged against the one having such claim." *Id.*

12

## B. Plaintiffs Have Stated a First Amendment Claim

Defendants argue that Plaintiffs fail to state a First Amendment Claim because the solicitation provision of § 4123.88(A) "are merely extensions of the State's ability to regulate government-held information." (Doc. 20 at 13.)[8] As a whole, Defendants argue, the statute "merely limits the information that the State will provide to the public and prohibits misuse of that information." (Doc. 25 at 6.) Specifically, it "makes clear that such information in the possession of the [Commission Defendants] is not a matter of public record and cannot be obtained and used for purposes of solicitation of such claimants or for any other purpose." (*Id.*) This function, Defendants argue, does not implicate the First Amendment. (*Id.*; Doc. 20 at 13-14.) According to Defendants, "Bevan is asking this Court to declare that Bevan has a constitutional right to intentionally obtain information that has been declared confidential and not a matter of public record . . . and to use such improperly gained information for direct, targeted solicitation of Ohio workers' compensation claimants." (Doc. 25 at 6-7.) Defendants cite no cases for its proposition that the statute's solicitation provision does not implicate Plaintiffs' First Amendment rights because it is simply an "extension" of the statute's other provisions. (Doc. 20 at 13-14; Doc. 25 at 5-8.)

---

[8] Defendants present several additional arguments, which the briefing in this case has shown to be moot. First, Defendants argue that the Eleventh Amendment bars Plaintiffs from seeking monetary damages against the State or State Officials sued in their official capacity. (Doc. 20 at 9.) Because Plaintiffs have agreed to dismiss their claims for monetary damages, (Doc. 23 at 9), this issue is now moot. Defendants also argue that the government may limit access to government information, as it does in §§ 4123.88(B), (C), and certain provisions of § 4123.88(A). (Doc. 20 at 10-13.) This argument, too, is moot, as Plaintiffs have limited their challenge to the provision of § 4123.88 that prohibits solicitation of workers' compensation claimants for the provision of legal representation. (Doc. 23 at 2.) For the same reasons, the Court need not address Defendants' argument related to the fraud prohibitions in § 4123.88(A). (Doc. 20 at 13; Doc. 23 at 2.) Finally, Defendants argue that Plaintiffs failed to allege action by any individual state actor as required for personal liability under § 1983. (Doc. 20 at 14-15.) Because Plaintiffs acknowledge that they did not bring an action against any individuals in their personal capacities, and because actions taken against officials in their official capacity are not "persons" subject to liability under § 1983, *Hafer v. Melo*, 502 U.S. 21, 26 (1991), this issue, too, is moot. (Doc. 23 at 9.)

Plaintiffs respond that the statute does not simply protect information; it "has totally banned lawyers from soliciting workers compensation claimants for potential legal representation." (Doc. 23 at 1.) Indeed, § 4123.88(A) provides:

> . . . No person shall directly or indirectly solicit authority, or pay or give anything of value to another person to solicit authority, or accept or receive pay or anything of value from another person for soliciting authority, from a claimant . . . to take charge of, or represent the claimant . . . in respect of, any claim or appeal which is or may be filed with the bureau or commission. . . .

§ 4123.88(A). Again, Plaintiffs have the better argument. Section 4123.88(A) contains a general prohibition on solicitation of workers' compensation claimants. So too with 4121-2-01(B), which provides that "[n]o person who solicits . . . shall be allowed to practice or represent parties before the [Commission Defendants.]" Ohio Admin. Code 4121-2-01(B). These provisions do not, as the Defendants posit, simply protect workers' compensation claimants from third parties' use of any information held by and procured from the Commission Defendants.

Because the provisions contain a general prohibition on the solicitation of workers' compensation claimants, they implicate Plaintiffs' First Amendment rights to the extent Plaintiffs' advertisements may be considered "solicitations" under the provisions. *Shapero*, 486 U.S. at 472 ("Lawyer advertising is in the category of constitutionally protected commercial speech."). The fact that Plaintiffs seek to invalidate two provisions of many in a statutory scheme does not affect the analysis. *See, e.g.*, *Babbitt*, 442 U.S. at 300-05 (considering the justiciability of several discrete sections of a statute, and determining that certain of them were justiciable). Read in conjunction with or separate from the surrounding provisions, § 4123.88(A) and 4121-2-01(B) prohibit solicitation of workers' compensation claimants. Plaintiffs have therefore stated a First Amendment claim.

14

### C. The Attorney General is a Proper Party to this Case

The Attorney General contends that he is not a proper defendant to this case because: (1) the Declaratory Judgment Act requires *notice to* but not *participation of* the Attorney General in this lawsuit; and (2) he is named in only one substantive allegation of the complaint. (Doc. 21 at 2.)

#### (1) It Does Not Matter Whether the Declaratory Judgment Act *Requires* the Attorney General to be Named as a Party

Under Ohio Revised Code § 2721.12(A), "if any statute or the ordinance or franchise is alleged to be unconstitutional, the attorney general also shall be served with a copy of the complaint in the action or proceeding and shall be heard." Ohio Rev. Code § 2721.12(A). While this provision does not *require* the Attorney General's participation in any lawsuit alleging that a statute is alleged to be unconstitutional, it also does not *prohibit* inclusion of the Attorney General in the case. Indeed, the Attorney General may properly be named a party to the lawsuit if he has "some connection with the enforcement of the act" and he "threaten[s] and [is] about to commence proceedings" to enforce it. *Ex parte Young*, 209 U.S. 123, 156 (1908); *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1048 (6th Cir. 2015).

#### (2) The Attorney General has the Requisite Connection to this Case

Plaintiffs argue that the Attorney General "has some connection with the enforcement of [§ 4123.88(A)]" through his obligation to enforce it, and that he "has indicated a commencement of proceedings to enforce the statute." (Doc. 22 at 6 (citing *Ex parte Young*, 209 U.S. at 156).)

The first element is easily met, because the Attorney General—indeed, has an obligation to enforce—§ 4123.88(A). Ohio Rev. Code § 4123.92 ("Upon the request of the industrial commission or the administrator of workers' compensation, the attorney general, or under the attorney general's direction the prosecuting attorney of any county in cases arising within the

15

county, shall institute and prosecute the necessary actions or proceedings for the enforcement of this chapter[.]"); Ohio Rev. Code § 109.84(A) ("upon the attorney general's becoming aware of criminal or improper activity related to Chapter 4121. or 4123. [sic] of the Revised Code, the attorney general shall investigate any criminal or civil violation of law related to Chapter 4121. or 4123. [sic] of the Revised Code.").

As to the second factor, the Attorney General argues that the grand jury subpoenas to third parties do not indicate a commencement of proceedings to enforce the statute.[9] (Doc. 21 at 5-6.) In particular, he argues that the subpoenas were issued to *third parties* rather than Plaintiffs, which may only indicate an investigation against these third parties. (*Id.*) It is unclear to the Court why the Attorney General makes this argument; Grand Jury subpoenas may be and are issued by the Attorney General to *witnesses* in addition to, and in advance of, subpoenas issued to *targets* of investigations. Plaintiffs allege as much in their complaint—that the Grand Jury subpoenas were issued to its business partners to collect information to prosecute Plaintiffs for violating § 4123.88(A)—and this Court must construe the complaint's allegations in the light most favorable to Plaintiffs.

As the Sixth Circuit stated:

> A plaintiff need not wait until a prosecutor initiates adverse action to have standing to sue to protect his First Amendment rights. . . . It would be a perverse reading of *Young* to say that, although [Plaintiff] might have an Article III injury before the Attorney General directly communicates his intent to prosecute him, the Eleventh Amendment would nonetheless simultaneously bar us from enjoining the Attorney General's initiating a prosecution. Rather, at the point that a threatened injury becomes sufficiently imminent and particularized to confer Article III standing, that threat of enforcement also becomes sufficient to satisfy this element of *Ex parte Young*.

---

[9] The Attorney General also argues that he "is not the Ohio official responsible for the rules and proceedings of the Bureau and Commission." Whether the Attorney General is responsible for the rules and proceedings of the Commission Defendants is irrelevant to whether he is responsible for enforcing § 4123.88(A).

*Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015). The Court already has found that the threatened injury here has met the requirements of Article III standing. *See supra* section (III)(A)(1). Therefore, "that threat of enforcement is also sufficient to satisfy this element of *Ex parte Young*." *Id.*[10]

## IV. CONCLUSION

For the above reasons, the motions to dismiss of the Commission Defendants and the Attorney General, (Docs. 20, 21), are **DENIED.**

**IT IS SO ORDERED.**

       /s/ Algenon L. Marbley_____
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**


**DATED: June 15, 2017**

---

[10] The Attorney General is incorrect in arguing that this case is like *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623 (6th Cir. 2013). The Attorney General had nothing to do with the policy at issue in *Top Flight*, which was enacted and enforced by the Lottery Commissioner. The same is not the case here.